IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LARRY MELTON, et. al., )
)
    Plaintiffs, )
)
VS. ) No. 1:02-1242-T/P
)
JOHN JEWELL, individually, )
et. al., )
)
    Defendants. )

---

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

---

    Defendants, John Jewell, John Jewell Aircraft, Inc., and Shawn Jewell (collectively "Defendants"), move to dismiss this case pursuant to Rule 37(b) and Rule 41(b) of the Federal Rules of Civil Procedure. In the alternative, Defendants move for an order prohibiting Plaintiffs from introducing evidence at trial "concerning any issues or matters wherein Defendants have sought discovery from Plaintiffs." (Supplement to Defs.' Second Mot. to Dismiss at 1-2). The alleged basis for these motions is Plaintiffs' conduct during discovery. For the following reasons, Defendants' Motion to Dismiss, Defendants' Second Motion to Dismiss, and all of Defendants' related requests for sanctions are DENIED.

I.

    Larry S. Melton, Johnny Melton, and Blankenship/Melton Aviation, Inc. ("Plaintiffs"), are Tennessee residents who together own a "Piper Aztec" airplane that is

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on 11/8/05

109

normally grounded at Franklin-Wilkins Airport in Lexington, Tennessee. The Federal Aviation Administration ("FAA") requires the airplane to undergo an annual inspection. The FAA also issues "Airworthiness Directives" during the course of a year that mandate certain repairs to be performed at the airplane's next annual inspection. Plaintiffs must comply with the inspection requirement and must obtain the necessary repairs in order to maintain "airworthy" status with the FAA.

In January of 2002, Plaintiffs and Defendants agreed that Defendants would perform the annual inspection of and make the necessary repairs to Plaintiffs' airplane at Defendants' place of business in Holly Springs, Mississippi. According to Plaintiffs, Defendants' work was completely defective. On September 27, 2002, Plaintiffs filed this diversity action against Defendants alleging negligence, negligence *per se*, breach of contract, fraud, promissory fraud, negligent misrepresentation, and outrageous conduct. The amended complaint alleges that Defendants' conduct caused Plaintiffs to suffer damages because of expensive physical repairs that had to be made to the airplane and because of Plaintiffs inability to use the airplane. The complaint also claims that Plaintiffs suffered "mental anguish, fear, and anxiety resulting from . . . dangerous and life[-]threatening test flights that Defendants approved." Am. Compl. at 13, ¶ 63.

II.

The procedural history of this case is very lengthy and very complex. Yet, Defendants make no allegation of any misconduct related to discovery by Plaintiffs or

Plaintiffs' counsel prior to the substitution of new defense counsel on September 16, 2004, nearly two years after this case was filed and approximately three weeks before the then-scheduled October 6, 2004 trial date. On September 24, 2004, Defendants, through their new counsel, moved for a continuance. One of the main bases for the motion to continue was the alleged need to conduct more discovery, even though previous defense counsel had not made any discovery-related objections as late as three weeks before the trial. Although Plaintiffs, who were ready for trial, vigorously objected to a continuance, the court had already granted Defendants' motion because of defense counsel's unfamiliarity with the case. The court referred the case to the United States Magistrate Judge for re-scheduling. Suffice it to say that, since the September, 2004 continuance, the nature and the pace of this litigation have changed significantly.

On May 6, 2005, United States Magistrate Judge Tu M. Pham ("Judge Pham") presided at a new scheduling conference, approximately six months after the date that Plaintiffs had expected that their case would go to trial. On May 13, 2005, Judge Tham issued a new scheduling order. The new order established August 1, 2005, as the deadline for completing all discovery, with the exceptions that Plaintiffs' Rule 26 expert disclosures were due on June 30, 2005 and that all expert witness depositions were due on September 1, 2005. The new scheduling order did not specify a trial date.

Plaintiffs appealed the scheduling order on the ground that "rescheduling discovery and depositions . . . rewards [Defendants] for six months of inactivity, [between the

3

September, 2004 continuance and the May, 2005 re-scheduling], while delaying Plaintiff's day in court." Dkt. 62. The court denied the appeal, simply noting that the new scheduling order was not "clearly erroneous or contrary to law." Dkt. 63. The court also re-set the trial for November 14, 2005 and set a pre-trial order deadline of November 4, 2005. The discovery that took place or that was supposed to take place between the May 6, 2005 scheduling conference and October 28, 2005, the date of Defendants' latest "[s]upplement" to their two motions to dismiss, is the basis for Defendants' requests for sanctions in the form of dismissal.

The first alleged discovery violation took place between Judge Pham's May scheduling conference and order and a Motion for an Order Compelling Discovery and Extending Discovery Cutoff Dates that Defendants filed on July 19, 2005. In the motion, Defendants listed numerous reasons why Plaintiffs' discovery responses had been inadequate. Judge Pham granted the motion, not because he necessarily agreed with Defendants' contentions, but because Plaintiffs had not objected to the motion. *See* dkt. 69 (August 10, 2005 Order Granting Defendants' Motion to Compel Plaintiffs to Respond to Discovery and Extending Discovery Cutoff Dates) (citing Local Rule 7.2 (a)(2)). The order extended the time for completing all document production, lay depositions, interrogatories, requests for admission, and Defendants' Rule 26 expert disclosures until October 1, 2005. The order set November 1, 2005 as the deadline for expert witness depositions. Finally, the order directed Plaintiffs to do almost verbatim what Defendants had requested in the motion

4

to compel.[1]

On October 3, 2005, approximately one month before the scheduled November trial, Defendants filed a motion to dismiss, claiming that Plaintiffs had not complied with the terms of Judge Pham's order. Defendants' first motion came with seventeen attachments. On October 10, 2005, Defendants filed a second motion to dismiss "based on new grounds." (Defs.' Second Mot. to Dismiss). This second motion to dismiss came with fifteen attachments. Finally, on October 28, 2005, Defendants filed a "Supplement to Defendants Second Motion to Dismiss Due to Plaintiffs' Late Filed, Evasive, Non-Responsive, and Incomplete Responses." (Supplement to Defs.' Second Mot. to Dismiss). Defendants motions and the attached exhibits comprise 441 pages, not to mention the memoranda and all of the opposition papers filed by Plaintiffs. Because Defendants' motions made a November trial unrealistic, the court re-set the trial for February 27, 2006.

III.

Both Rule 37(b)(2)(C)[2] and Rule 41(b)[3] of the Federal Rules of Civil Procedure

---

[1] The order deemed all of Plaintiffs' objections to Defendants' discovery requests waived, implicitly including attorney-client privilege. *See* dkt. 69. The order granted Plaintiffs eleven days to respond to Defendants' first set of interrogatories and requests for production, in accordance with the federal rules and the local rules, but the order did not opine as to the adequacy of Plaintiffs' responses as of the date of the order. *Id.* The order directed Plaintiffs to produce a legible and complete copy of their pilot's log book within eleven days, but the order did not discuss the adequacy of the log books that Plaintiffs had already produced or allowed Defendants to inspect. *Id.* The order required Plaintiffs to produce a tape recording allegedly made on September 4, 2002 without redaction, warning Plaintiffs that failure to produce the tape would result in inadmissibility. *Id.* Plaintiffs subsequently requested clarification as to this last aspect of Judge Pham's order, based on attorney-client privilege, but the request for clarification was denied. *See* dkt. 74.

[2] Rule 37(b)(2)(C) provides that:

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or

5

supplement the inherent authority of a federal district court to dismiss a case as a sanction for pre-trial misconduct. *See, e.g., Bowles v. City of Cleveland*, No. 03-3938, 2005 U.S. App. LEXIS 7261, at **6–7 (6th Cir. April 25, 2005) (unpublished opinion) (noting that a district court may rely on Rule 16(f), 37(b)(2)(C), 41(b), or its "inherent power") (citing *Coleman v. American Red Cross*, 23 F.3d 1091(6th Cir. 1994); *Cooke v. United States*, 267 U.S. 517, 539 (1925)); *see also Mullins v. Hand*, No. 05-70003, 2005 U.S. Dist. LEXIS 22159, at *1 (Sept. 27, 2005 E.D. Mich.) (opinion and order). The justification for this power is part administrative and part institutional. As a matter of practical necessity, dilatory and other pre-trial tactics must be avoided to preserve the " 'due and orderly administration'" of the court's docket. *Bowles*, 2005 U.S. App. LEXIS 7261, at **7 (quoting *Cooke v. United States*, 267 U.S. 517, 539 (1925)). As a matter of institutional integrity, pre-trial misconduct must be punished to uphold the authority and dignity of Article III courts. *Id.* (internal quotation marks omitted). These interests are important enough, moreover, that they will in appropriate cases result in the dismissal of an innocent client's case based on the action or inaction of his attorney. *Cf. Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 396–97 (1993) (citing *Link v. Wabash R. Co.*, 370 U.S. 626 (1962);

---

permit discovery . . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: An order . . . dismissing the action.

[3] Rule 41(b) provides that:

For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action.

*United States v. Boyle*, 469 U.S. 241 (1985)).

The fact that the court possesses authority, however, is not to say that the court is required to or should impose a sanction as severe as dismissal absent extraordinary circumstances. *See Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 590–91 (6th Cir. 2001) (discussing the Sixth Circuit's "extreme reluctance," notwithstanding *Pioneer Inv. Serv. Co.* and *Link*, to deprive a plaintiff of his day in court based on attorney misconduct) (citations omitted). Instead, the court must exercise its discretion in light of the many competing interests at stake. Among those interests are:

> the court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant . . . [,] [balanced against] the policy which favors disposition of cases on their merits [and the client's legitimate interest in having his day in court].

*Id.* at 590–91 (quoting *Little v. Yeuter*, 984 F.2d 160, 162 (6th Cir. 1993)). Because dismissal is such a harsh sanction, and because of the policy favoring merit-based disposition, the court's discretion is also informed by considering:

> (1) whether the [offending] party's failure is due to willfulness, bad faith, or fault; (2) whether the [defendant] was prejudiced by the . . . misconduct; (3) whether the [offending] party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions [are more appropriate].

*Id.* at 589.[4] The type of willfulness, bad faith, or fault that suffices to warrant dismissal will be present only if the offending party's conduct demonstrates either an "intent to thwart

---

[4]The court will balance the same interests and consider the same factors regardless of the "source" of its authority to dismiss as a sanction for discovery misconduct. *See, e.g. Bowles v. City of Cleveland*, No. 03-3938, 2005 U.S. App. LEXIS 7261, at **6–9 (6th Cir. April 25, 2005).

7

judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Id.* at 591, *quoted in Tung-Hsuing Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005); *see also Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) (requiring a "clear record of delay or contumacious conduct by the plaintiff") (quoting *Silas v. Sears, Roebuck & Co., Inc.*, 586 F.2d 382, 385 (5th Cir. 1978)).

## IV.

After reviewing each of the 441 pages that Defendants have filed in support of their motions to dismiss, the court is confident that Defendants' complaints fall far short of establishing the kind of "reckless disregard" necessary to support dismissal. Not once in these 441 pages do Defendants ever cite to an instance where Plaintiffs have been warned *by the court* that they were on the verge of having their case dismissed based on discovery misconduct. (*See* Mem. Supp. Defs.' Mot. to Dismiss at 16) (stating that Defendants "warned" Plaintiffs in a letter that "Defendants would file a motion for dismissal). Judge Pham's order, moreover, simply tracked the language of Defendants' Motion to Compel—not because Judge Pham was necessarily convinced that Plaintiffs were obstructing discovery, but because Plaintiffs did not respond to the motion in the first place. In any event, the order did not mention dismissal, and the mere fact that the order was issued did not constitute a "warning" to cease *alleged* misconduct.

Second, Defendants have not shown prejudice. Many of Defendants' complaints deal with the timeliness of Plaintiffs discovery responses. Any prejudice as a result of

8

untimeliness has been remedied by the court's re-scheduling of the November trial, which was necessitated by the need to scour the record to search for a possible instance of bad faith by Plaintiffs. Moreover, the other objections Defendants make deal with the relevance, persuasiveness, organization, or "categorization" of Plaintiffs' evidence of damages. In other words, Defendants would like for Plaintiffs to prove their case to Defendants as part of discovery. This objection of Defendants is seriously misguided. The record establishes that Plaintiffs have attempted to provide, are in the process of providing, or will eventually provide Defendants with every document and answer to every question or other request of Defendants as promptly as Plaintiffs are physically capable. At trial, or in a proper motion, Defendants may be able to successfully challenge the persuasiveness or even the legal sufficiency of Plaintiffs' evidence. Plaintiffs' duty to Defendants during discovery, however, is simply to disclose in good faith the relevant information that Plaintiffs *do* have—not to dissect the exact information that Plaintiffs will rely on at trial or to present it in the same manner or order that Plaintiffs would present it at closing argument to the trier of fact. Furthermore, the court expects that the parties' pre-trial order will more specifically clarify the exact items of evidence that each side will rely on at trial. Thus, Defendants' objections to the persuasiveness of Plaintiffs' "evidence" of damages is not significant enough to justify dismissal.

Third, there is not a shred of evidence that Plaintiffs have intentionally or recklessly sought to disrupt these proceedings by misconduct during discovery. To the contrary, while

the form, manner, and literal timeliness of some of Plaintiffs' discovery responses may have been frustrating and unsatisfying to Defendants, not once do Defendants suggest that Plaintiffs have willfully denied Defendants anything that Defendants are legally entitled to discover. Even when Defendants pointed out alleged deficiencies in Plaintiffs' responses and productions, Plaintiffs made good faith efforts to appease Defendants without contesting whether the corrections were legally required. This accommodating and non-adversarial tone, in and of itself, makes "bad faith" unlikely. Indeed, Defendants are reminded that they are not the only parties who have been frustrated during the discovery process; Plaintiffs were frustrated on the eve of trial one year ago when, as a result of the substitution of new defense counsel, they were required to face what will turn out to be more than one extra year of pre-trial litigation. Perhaps some of the parties' discovery disputes are attributable to Plaintiffs' legitimate but unavoidable frustration with that fact, and perhaps some of those disputes are attributable to the demanding nature of some of defendants discovery requests. To be sure, not one of these conflicts is attributable to "willfulness, bad faith, or fault."

Fourth, a more appropriate remedy is not to dismiss this case but to formally warn Plaintiffs that they are expected to act in good faith during discovery and that any intentional or reckless failure to cooperate will in fact result in dismissal or in the exclusion of evidence at trial. Also, Plaintiffs are to remember that the pre-trial order due on February 17, 2006, should be more specific about Plaintiffs' calculation of damages.

10

Finally, the court's need to manage its docket in this case has been frustrated as equally by Defendants' motions to dismiss as it has by any conceivable discovery violation of Plaintiffs. The public, the Plaintiffs, and the Article III federal court system have legitimate interests in the disposition of this case on its merits as expeditiously as possible. Rather than challenging the legal sufficiency or the weight of Plaintiffs proof of damages, however, Defendants have required the court to re-set the trial and to read six months of correspondence, discovery requests, and discovery responses in an effort to determine whether Plaintiffs have exhibited the type of "contumacious" conduct that would lead the court to exercise its discretion in favor of the extreme sanction of dismissal. In light of the court's interest in managing its voluminous docket, the various interests favoring merit-based resolution of legal disputes, the new trial date, and the less-compelling nature of any "prejudice" that Defendants may have suffered by Plaintiffs' failure to "categorize" their damages or to label their documents, the court exercises its discretion against granting Defendants' motions to dismiss.

V.

In summary, Defendants have not even begun to make a persuasive showing that any discovery violations that may have occurred in this case justify depriving Plaintiff of a trial on the merits. The court does not discuss each and every one of the alleged instances of discovery abuse listed in the 441 pages of defense motions and exhibits because, neither in isolation nor in context, not one of them reflects an intentional or reckless disregard for the

11

integrity of the pre-trial discovery procedures that govern in federal court. *Compare* this case with *Hood v. Smith's Transfer* Corp., No. 98-5917, 1999 U.S. App. LEXIS 20959, at **7–12 (6th Cir. Aug. 26, 1999) (affirming dismissal based on plaintiff's failure to comply with four orders and a delay of ten years); *Knoll v. AT&T*, 176 F.3d 359, 364 (6th Cir. 1999) (affirming dismissal where counsel neglected case, repeatedly ignored court orders, and refused to proceed on the day of trial). At most, the instances of alleged misconduct in this case instead reflect frustration on the part of both parties in preparing or waiting for trial, and they sometimes suggest a lack of organization in and clarity to Plaintiffs' documentation of damages. Defendants are entitled to bring that latter point to the court's attention as a challenge on the merits. The instant motions, however, mistakenly accuse Plaintiffs of bad faith. The court is not persuaded.

## VI.

For the foregoing reasons, Defendants' Motion to Dismiss and Defendants' Second Motion to Dismiss Based on New Grounds are DENIED. For the same reasons, and because it would have the same effect, Defendants' request that Plaintiffs be prohibited from introducing evidence "concerning any issues or matters wherein Defendants have sought discovery from Plaintiffs" is also DENIED. Defendants' request for fees and expenses in pursuing these motions is DENIED. Defendants' motion that they be allowed to present an affidavit of proof to support Defendants' request for fees and expenses in pursuing these

motions are DENIED.

IT IS SO ORDERED.

_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_4 November 2005_
DATE

13

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 109 in case 1:02-CV-01242 was distributed by fax, mail, or direct printing on November 8, 2005 to the parties listed.

---

Daniel D. Warlick
LAW OFFICE OF DAN WARLICK
611 Commerce Street
Ste. 2712
Nashville, TN 37203

George S. Pethoff
PETHOFF AND ASSOCIATES
Washington Courtyard
305 Washington Avenue
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT