FILED BY ____ D.C.
05 NOV 30 AM 9:02
CLERK, U.S. DISTRICT COURT
W/D OF TN, JACKSON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LARRY S. MELTON, *et. al.*,

Plaintiffs,

VS. No. 1:02-1242-T-P

JOHN JEWELL, Individually, *et. al.*,

Defendants.

---

ORDER DENYING PLAINTIFF'S MOTION TO DISALLOW TESTIMONY REGARDING THE STARTUP OF THE NY5533Y ENGINES AND TO DISALLOW RAYMOND E. LADD AS A WITNESS FOR DEFENDANTS

---

Plaintiffs, Larry S. Melton ("Melton"), Johnny Melton, and Blankenship/Melton, Aviation, Inc., (collectively "Plaintiffs"), moved for a pretrial order prohibiting (1) "any" expert testimony regarding the October 8, 2003 startup of the airplane that is the subject of this diversity case; and (2) "any" expert testimony from one of Defendants' experts—Raymond E. Ladd ("Ladd"). Plaintiffs relied on Rule 703 of the Tennessee Rules of Evidence. For the following reasons, Plaintiffs' Motion to Disallow Testimony Regarding the Startup of the NY5533Y Engines and to Disallow Raymond E. Ladd as a Witness for Defendants [Dkt. # 105] is DENIED.

I.

Plaintiffs and Defendants entered into an agreement whereby Defendants would

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 12/1/05



perform government-mandated inspections of and repairs to Plaintiffs' private airplane. The instant lawsuit arose out of Defendants' alleged breach of that contract. The amended complaint also alleged that Defendants' were guilty of negligence, negligence *per se*, fraud, promissory fraud, negligent misrepresentation, and outrageous conduct. Plaintiffs sought damages compensating them for repairs that were allegedly necessitated by Defendants' faulty work, for losses allegedly sustained because of Plaintiffs' inability to use the airplane, and for mental anguish, fear, and anxiety attributable to certain allegedly "life[-]threatening" test flights approved by Defendants.

A crucial issue during discovery was obviously whether Plaintiffs' airplane engines were actually damaged by Defendants' acts or omissions. To preserve evidence bearing on that issue, the parties and counsel agreed that the engines would be removed from Plaintiffs' airplane and that Defendants' and defense counsel, and/or another defense representative, could be present at the engine removal. It appears that the parties also assumed, naturally, that one or more plaintiff, or representative of Plaintiffs, would attend the engine removal. The parties did not explicitly discuss whether the engines would be cranked prior to their removal.

Plaintiffs, through counsel, independently made the arrangements for the engine removal by contracting with Signature Flight Support ("Signature") in Memphis. Signature agreed to perform the removal on October 8, 2003. Signature's was to begin its work after a defense representative arrived. *See* Melton Dep. at 77 ¶ 20–22. Shortly before 8:00 a.m.

that morning, one of Defendants' experts, Ladd, appeared on Defendants' behalf to witness the engine removal and to make photographs. No plaintiff, or representative of Plaintiffs, was present at that time.

Pursuant to what has been referred to as an "industry standard" that Signature always followed when removing engines, the engines were first started and their performance was first "checked" before they were removed. Vann. Dep. at 25–26. Jerry Lynn Rhein ("Rhein"), a Signature employee, performed the engine runup and performance check alone from inside of the airplane cockpit while Ladd observed and took photographs from the outside. Rhein Dep. at 28. When the runup process was complete, Rhein exited the cockpit carrying engine performance notes that he had recorded from inside the cockpit. Rhein gave these notes to Ladd, correctly assuming that Ladd would have had an interest in the performance of the engine. Rhein also allegedly told Ladd that the engines "run good." Ladd Aff. ¶ 7. Plaintiffs' representative on that date—plaintiff Melton—did not arrive at Signature until after Rhein had started the airplane's twin engines and had made the relevant performance notes. Melton also did not hear Rhein tell Ladd that the engines had "run good."

The only evidence in the record is that Ladd was simply acting as Defendants' duly authorized representative on the date in question and that Ladd merely observed and photographed the engine runups and removals that Signature performed. Ladd Aff. ¶¶ 8–10. Ladd was not responsible for the absence of a Plaintiffs' representative, Ladd had no

authority to interfere with Signature's decision to start the airplane's engines, and Ladd did not request that Rhein make any engine performance notes or that Rhein provide those notes to Ladd. Ladd Aff. ¶¶ 3–7.

More than two years after the engine runup, engine performance tests, and engine removal, defense counsel asked Ladd to ask Rhein and Rhein's boss, Joe Vann ("Vann"), to give depositions in the pending case. Ladd Aff. ¶ 12. Vann agreed, but Rhein informed Ladd that Rhein could not give a deposition if it meant he would have to miss work or stay too late after work. Ladd Aff. ¶ 12. Defense counsel then told Ladd to arrange a convenient time for Rhein to discuss his recollection of the engine runup with both defense counsel and Ladd present. Ladd Aff. ¶ 12. Ladd complied with counsel's request, and Rhein agreed to meet with defense counsel and Ladd on August 30, 2005. Ladd Aff. ¶ 12.

When Ladd appeared for the meeting with Rhein, however, defense counsel was not present. Ladd Aff. ¶ 12. Ladd, accordingly, made a call to defense counsel to determine counsel's whereabouts. Ladd Aff. ¶ 12. Counsel informed Ladd that he had forgotten the meeting but requested that Ladd remain with Rhein and interview Rhein regarding the events of October 8, 2003. Ladd Aff. ¶ 12. Ladd remained, but Rhein was initially unable to remember the October 8, 2003 engine runup. Ladd attempted to refresh Rhein's recollection by allowing Rhein to review some notes that Ladd had personally typed regarding the October 8, 2003 runup. Ladd had typed the notes by referring to the hand-written notes that Rhein had previously made and given to Ladd on October 8, 2003. Ladd

Aff. ¶ 12.

Plaintiffs moved to exclude any testimony regarding the October 8, 2003 engine startup and to prohibit Ladd from testifying as an expert. First, Plaintiffs contended that the parties had an "agreement" that both parties would have a representative or representatives present on October 8, 2003 and that the parties did not authorize an engine runup before removal. Under these circumstances, Plaintiffs submitted that the results of the runup were untrustworthy because there was no Plaintiffs' representative present at the time the allegedly "unauthorized" runup occurred. Second, Plaintiffs argued that the court should find that Ladd is untrustworthy because he "caused" the startup of the engines out of the presence of any Plaintiffs' representative, because he "tampered" with Rhein's notes by typing them, and because he "tampered" with Rhein before Rhein's deposition. In support of Plaintiffs' arguments, Plaintiffs relied on Tennessee Rule of Evidence 703.

II.

Overlooking, for the purpose of the instant motion, the obvious question of whether Tennessee or federal law governs the admissibility of Ladd's testimony and "any" other testimony regarding the October 8, 2003 startup, the court finds that Plaintiffs' factual inferences are simply unjustified. First, even if there was an "agreement" between Plaintiffs and Defendants providing that each side could have a representative present on October 8, 2003, that agreement did not bind *Signature* or require Signature to postpone its business operations until a Plaintiffs' representative arrived. Second, Ladd did not have the

authority to require Signature to wait for a Plaintiffs' representative. Third, even if Signature would have voluntarily delayed the process upon a polite request from Ladd, it was not Ladd's responsibility to make the request in the first place. Plaintiffs made the arrangements with Signature, and the only instruction given Signature was that Signature should wait *for a defense representative* to arrive before beginning. Fourth, Plaintiffs were free to designate a representative to attend the October 8, 2003 removal, and they did. Plaintiff Melton's tardiness on that date did not make either the test results or Ladd "untrustworthy." Fifth, the runups were done pursuant to routine business practices and to industry standards, not because Ladd encouraged the tests without Plaintiffs' approval and/or presence. In fact, the absence of Plaintiffs' "authorization" for the runups is beside the point. The runups would have been performed anyway.

Sixth, Ladd's pre-deposition visitation with Rhein did not automatically render him "untrustworthy" to testify as an expert. Rhein was not represented by counsel and is not a party to this litigation. Ladd visited Rhein under the impression that defense counsel would also be present. When he turned out to be incorrect, Ladd remained with Rhein as the designee of defense counsel for the purpose of questioning Rhein regarding the latter's memory of the October 8, 2003 runups. At trial, if Rhein testifies, Plaintiffs may wish to test his memory or to object to the manner of recollection used by Defendants. Those are separate issues, and they are not properly before the court. As for Ladd, Plaintiffs may wish challenge his qualifications or to lodge an objection to all or part of the factual basis

underlying his expert opinion under the applicable *federal* rules and case law. Plaintiffs may also desire to make the argument that Ladd is biased is Defendants' favor. Those are also separate issues, and it is not the court's responsibility to manufacture a persuasive argument in Plaintiffs' favor using the correct analytical framework.

In short, Plaintiffs did not show untrustworthiness—either as to Ladd or to the results of the runup tests upon which Defendants propose to offer testimony at trial. Because untrustworthiness is the only factual ground Plaintiffs raise in the instant motion, then, the motion cannot be granted. Although Plaintiffs may have other, different types of objections to all or to parts of Defendants' witness testimony, it is not the court's duty to ascertain those objections or to read them into a motion that simply makes a generic accusation of untrustworthiness.

III.

For the foregoing reasons, Plaintiffs' Motion to Disallow Testimony Regarding the Startup of the NY5533Y Engines and to Disallow Raymond E. Ladd as a Witness for Defendants [Dkt. # 105] is DENIED.

IT IS SO ORDERED.

James D. Todd
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

29 November 2005
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 118 in case 1:02-CV-01242 was distributed by fax, mail, or direct printing on December 1, 2005 to the parties listed.

Daniel D. Warlick
LAW OFFICE OF DAN WARLICK
611 Commerce St., Ste. 2712
Nashville, TN 37203

George S. Pethoff
PETHOFF AND ASSOCIATES
Washington Courtyard
305 Washington Avenue
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT